IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

BYRON RAY PHILLIPS, #231723,          )
                                       )
          Plaintiff,                   )
                                       )
     v.                                )          CASE NO. 2:15-CV-740-WKW
                                       )
KARLA JONES, et al.,                   )
                                       )
          Defendants.                  )
                                       )
BYRON RAY PHILLIPS, #231723,          )
                                       )
          Plaintiff,                   )
                                       )
     v.                                )          CASE NO. 2:16-CV-109-WKW
                                       )
KARLA JONES, et al.,                   )
                                       )
          Defendants.                  )

## RECOMMENDATION OF THE MAGISTRATE JUDGE

### I.  INTRODUCTION[1]

     This consolidated 42 U.S.C. § 1983 action is pending before the court on complaints

filed by Byron Ray Phillips ("Phillips"), an indigent state inmate.[2] Phillips challenges

---

[1]All documents and page numbers cited in this Recommendation are those assigned by the Clerk in the docketing process. When citing to documents filed in *Phillips v. Jones, et al.*, Case No. 2:16-CV-109-WKW-SRW, the court will identify that case in its citations.  All other documents cited herein are those filed in the lead case, *Phillips v. Jones, et al.*, Case No. 2:15-CV-740-WKW-SRW, and will not contain a reference to the case number.

[2]Although the plaintiff identifies himself as Byron Ray Phillips, several documents submitted by the defendants identify the plaintiff as Bryon Ray Phillips. The AIS number assigned for the plaintiff is consistent throughout the record before the court, which suggests that Byron Phillips and Bryon Ray Phillips are the same person. In this Recommendation, the court will refer to the plaintiff as he identifies himself — as Byron Ray Phillips.

separate actions which occurred at the Ventress Correctional Facility on or about August 22, 2015, September 17, 2015 and September 26, 2015.[3] Although the pleadings filed by Phillips are far from models of clarity, the court interprets the complaints to contain the following claims for relief: (i) deliberate indifference to plaintiff's safety — i.e., failure to protect him from altercations with other inmates on August 22, 2015, September 17, 2015 and September 26, 2015, and (ii) unnecessary use of mace to quell the altercation on September 26, 2015. Phillips names Karla Jones, Capt. Pamela Harris, Lt. Bradley Walker, Lt. Althea Townsend, Sgt. Curtis Simmons, Officer Jimmy Rumph and Capt. Jimmy Thomas, all correctional officials employed at Ventress at the time relevant to the complaint, as defendants.[4] Phillips seeks monetary damages for the alleged violations of his constitutional rights.

The defendants filed a special report, supplements thereto and supporting evidentiary materials addressing the claims for relief presented by Phillips. In these documents, the defendants deny violating Phillips' constitutional rights. The court issued orders directing Phillips to file responses to the defendants' reports, to include affidavits, sworn statements or other evidentiary materials. Doc. 12 at 2 & Doc. 41 at 2. These orders specifically cautioned Phillips that unless "**sufficient legal cause**" is shown within fifteen days of entry of either order "**why such action should not be undertaken**, … the court

---

[3]Phillips initially states the second incident occurred after August 22, 2015 and possibly sometime around September 9, 2015. Doc. 1 at 5. However, the certified records before the court establish, and Phillips does not dispute, that the actual date of this incident is September 17, 2015.

[4] Construing the consolidated complaints liberally, these pleadings present claims against the defendants in both their individual and official capacities.

may at any time [after expiration of the time for his filing a response to this order] and **without further notice to the parties** (1) treat the special reports and any supporting evidentiary materials as a motion for summary judgment and (2) after considering any response as allowed by this order, rule on the motion for summary judgment in accordance with the law." Doc. 41 at 3. Phillips filed an unsworn response to the defendants' initial special report, Doc. 15, but filed no response to the defendants' supplemental special reports.

Pursuant to the orders entered in this case, the court deems it appropriate to treat the defendants' reports as a motion for summary judgment. Thus, this case is now pending on the defendants' motion for summary judgment. Upon consideration of the defendants' motion for summary judgment, the evidentiary materials filed in support thereof, the complaints and the response filed by Phillips, the court concludes that summary judgment is due to be granted in favor of the defendants.

## II. SUMMARY JUDGMENT STANDARD

"Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine [dispute] as to any material fact and that the moving party is entitled to judgment as a matter of law." *Greenberg v. BellSouth Telecomm., Inc.*, 498 F.3d 1258, 1263 (11th Cir. 2007) (internal quotation marks omitted); Rule 56(a), Fed. R. Civ. P. ("The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any

material fact and the movant is entitled to judgment as a matter of law.").[5] The party moving for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the [record, including pleadings, discovery materials and affidavits], which it believes demonstrate the absence of a genuine issue [dispute] of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Jeffery v. Sarasota White Sox, Inc.*, 64 F.3d 590, 593 (11th Cir. 1995) (holding that moving party has initial burden of showing there is no genuine dispute of material fact for trial). The movant may meet this burden by presenting evidence indicating there is no dispute of material fact or by showing that the nonmoving party has failed to present appropriate evidence in support of some element of its case on which it bears the ultimate burden of proof. *Celotex*, 477 U.S. at 322–24; *Moton v. Cowart*, 631 F.3d 1337, 1341 (11th Cir. 2011) (holding that moving party discharges his burden by showing the record lacks evidence to support the nonmoving party's case or the nonmoving party would be unable to prove his case at trial).

When the defendants meet their evidentiary burden, as they have in this case, the burden shifts to the plaintiff to establish, with appropriate evidence beyond the pleadings, that a genuine dispute material to his case exists. *Clark v. Coats & Clark, Inc.*, 929 F.2d

---

[5]Although Rule 56 underwent stylistic changes in 2010, the revision of "[s]ubdivision (a) carries forward the summary-judgment standard expressed in former subdivision (c), changing only one word – genuine 'issue' becomes genuine 'dispute.' 'Dispute' better reflects the focus of a summary-judgment determination." *Id*. "'Shall' is also restored to express the direction to grant summary judgment." *Id*. Despite these changes, the substance of Rule 56 remains the same and, therefore, all cases citing prior versions of the rule remain equally applicable to the current rule.

604, 608 (11th Cir. 1991); *Celotex*, 477 U.S. at 324; Fed.R.Civ.P. 56(e)(3); *Jeffery*, 64 F.3d at 593-94 (holding that, once a moving party meets its burden, "the non-moving party must then go beyond the pleadings, and by its own affidavits [or statements made under penalty of perjury], or by depositions, answers to interrogatories, and admissions on file," demonstrate that there is a genuine dispute of material fact). In civil actions filed by inmates, federal courts "must distinguish between evidence of disputed facts and disputed matters of professional judgment. In respect to the latter, our inferences must accord deference to the views of prison authorities. Unless a prisoner can point to sufficient evidence regarding such issues of judgment to allow him to prevail on the merits, he cannot prevail at the summary judgment stage." *Beard v. Banks*, 548 U.S. 521, 530 (2006) (internal citation omitted).  This court will also consider "specific facts" pled in a plaintiff's sworn complaint when considering his opposition to summary judgment. *Caldwell v. Warden, FCI Talladega*, 748 F.3d 1090, 1098 (11th Cir. 2014). However, "mere conclusions and unsupported factual allegations are legally insufficient to defeat a summary judgment motion." *Ellis v. England*, 432 F.3d 1321, 1326 (11th Cir. 2005). A genuine dispute of material fact exists when the nonmoving party produces evidence that would allow a reasonable fact-finder to return a verdict in its favor such that summary judgment is not warranted. *Greenberg*, 498 F.3d at 1263; *Allen v. Bd. of Pub. Educ. for Bibb Cnty.*, 495 F.3d 1306, 1313 (11th Cir. 2007). "The mere existence of some factual dispute will not defeat summary judgment unless that factual dispute is material to an issue affecting the outcome of the case." *McCormick v. City of Fort Lauderdale*, 333 F.3d 1234,

1243 (11th Cir. 2003) (citation omitted). "[T]here must exist a conflict in substantial evidence to pose a jury question." *Hall v. Sunjoy Indus. Group, Inc.*, 764 F. Supp. 2d 1297, 1301 (M.D. Fla. 2011) (citation omitted). "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007); *Feliciano v. City of Miami Beach*, 707 F.3d 1244, 1253–54 (11th Cir. 2013) (same).

Although factual inferences must be viewed in a light most favorable to the plaintiff and pro se complaints are entitled to liberal interpretation, a pro se litigant does not escape the burden of establishing by sufficient evidence a genuine dispute of material fact. *See Beard*, 548 U.S. at 525; *Brown v. Crawford*, 906 F.2d 667, 670 (11th Cir. 1990). Thus, the plaintiff's pro se status alone does not compel this court to disregard elementary principles of production and proof in a civil case.

The court has undertaken a thorough review of all the evidence contained in the record. After this review, the court finds that Phillips has failed to demonstrate a genuine dispute of material fact in order to preclude entry of summary judgment in favor of the defendants.

### III.  ABSOLUTE IMMUNITY

To the extent Phillips requests monetary damages from the defendants in their official capacities, they are entitled to absolute immunity. Official capacity lawsuits are

"in all respects other than name, … treated as a suit against the entity." *Kentucky v. Graham*, 473 U. S. 159, 166 (1985).  As the Eleventh Circuit has held,

> the Eleventh Amendment prohibits federal courts from entertaining suits by private parties against States and their agencies [or employees]. There are two exceptions to this prohibition: where the state has waived its immunity or where Congress has abrogated that immunity. A State's consent to suit must be unequivocally expressed in the text of [a] relevant statute. Waiver may not be implied. *Id*.  Likewise, Congress' intent to abrogate the States' immunity from suit must be obvious from a clear legislative statement.

*Selensky v. Alabama*, 619 F. App'x 846, 848–49 (11th Cir. 2015) (internal quotation marks and citations omitted).  Thus, a state official may not be sued in his official capacity unless the state has waived its Eleventh Amendment immunity, *see Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89, 100 (1984), or Congress has abrogated the State's immunity, *see Seminole Tribe v. Florida*, 517 U.S. 44, 59 (1996).

> Neither waiver nor abrogation applies here. The Alabama Constitution states that "the State of Alabama shall never be made a defendant in any court of law or equity." Ala. Const. Art. I, § 14.  The Supreme Court has recognized that this prohibits Alabama from waiving its immunity from suit.

*Selensky*, 619 F. App'x at 849 (citing *Alabama v. Pugh,* 438 U.S. 781, 782 (1978) (consent is prohibited by the Alabama Constitution).  "Alabama has not waived its Eleventh Amendment immunity in § 1983 cases, nor has Congress abated it." *Holmes v. Hale*, 701 F. App'x 751, 753 (11th Cir. 2017) (citing *Carr v. City of Florence*, Ala., 916 F.2d 1521, 1525 (11th Cir.1990)).  In light of the foregoing, the defendants are entitled to sovereign immunity under the Eleventh Amendment for claims seeking monetary damages from them in their official capacities. *Selensky*, 619 F. App'x at 849; *Harbert Int'l, Inc. v. James*, 157 F.3d 1271, 1277 (11th Cir. 1998) (holding that state officials sued in their official capacities

are protected under the Eleventh Amendment from suit for damages); *Edwards v. Wallace Community College*, 49 F.3d 1517, 1524 (11th Cir. 1995) (holding that damages are unavailable from state official sued in his official capacity).

## IV.  DISCUSSION OF CLAIMS FOR RELIEF[6]

### A.  Deliberate Indifference

1. <u>Failure to Protect from Other Inmates</u>.  "A prison official's duty under the Eighth Amendment is to ensure reasonable safety, a standard that incorporates due regard for prison officials' unenviable task of keeping dangerous men in safe custody under humane conditions." *Farmer v. Brennan*, 511 U.S. 825, 844–45 (1994) (internal quotations and citations omitted). Officials responsible for inmates may be held liable under the Eighth Amendment for acting with "deliberate indifference" to an inmate's safety when the official knows the inmate faces "a substantial risk of serious harm" and with such knowledge disregards the risk by failing to take reasonable measures to abate it. *Id.* at 828. A constitutional violation occurs only "when a substantial risk of serious harm, of which

---

[6] Phillips presents inconsistent statements of fact with respect to the failure to protect claims arising in September of 2015. For example, he fails to provide an accurate date for the September 17, 2015 assault and misstates the injuries received during this altercation, seemingly confusing the assault on this date with the one which occurred on September 26, 2017 or some other incident not referenced in this action. Additionally, in the initial complaint, Phillips avers that Officer McDonald transferred him to the Restricted Privilege Dorm (Dorm B1) on September 25, 2015, Doc. 1 at 5, while, in his response, he says that defendant Walker undertook this action, Doc. 15 at 3. The undisputed records submitted by the defendants establish that defendant Walker attempted to place Phillips in the Restricted Privilege Dorm after his medical evaluation on September 17, 2015, but did not complete the transfer because of the verbal protests of other inmates in that dorm. Doc. 43-1 at 5 & Doc. 43-3 at 2. Based on these inconsistencies and contradictory statements, the court has used not only the complaints, but also the undisputed prison/medical records compiled contemporaneously with the challenged actions to relate the relevant facts.

the official is subjectively aware, exists and the official does not respond reasonably to the risk." *Cottone v. Jean*, 326 F.3d 1352, 1358 (11th Cir. 2003). "It is not, however, every injury suffered by one prisoner at the hands of another that translates into constitutional liability for prison officials responsible for the victim's safety." *Farmer*, 511 at 834. "Within [a prison's] volatile 'community,' prison administrators are to take all necessary steps to ensure the safety of … the prison staff and administrative personnel… .  They are [also] under an obligation to take reasonable measures to guarantee the safety of the inmates themselves." *Hudson v. Palmer*, 468 U.S. 517, 526–27 (1984). The Eleventh Circuit has, however, "stress[ed] that a 'prison custodian is not the guarantor of a prisoner's safety." *Purcell ex rel. Estate of Morgan v. Toombs County, Ga.*, 400 F.3d 1313 (11th Cir. 2005), citing *Popham v. City of Talladega*, 908 F.2d 1561, 1564 (11th Cir. 1990).  "Only '[a] prison official's deliberate indifference to a known, substantial risk of serious harm to an inmate violates the Eighth Amendment.'" *Harrison v. Culliver*, 746 F.3d 1288, 1298 (11th Cir. 2014); citing *Marsh v. Butler Cnty., Ala.*, 268 F.3d 1014, 1028 (11th Cir. 2001), *abrogated on other grounds by Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007). "In order to state a § 1983 cause of action against prison officials based on a constitutional deprivation resulting from cruel and unusual punishment, there must be at least some allegation of a conscious or callous indifference to a prisoner's rights, thus raising the tort to a constitutional stature." *Williams v. Bennett*, 689 F.2d 1370, 1380 (11th Cir. 1982).

The law requires both objective and subjective elements to demonstrate an Eighth Amendment violation.  *Caldwell v. Warden, FCI Talladega*, 748 F.3d 1090, 1099 (11th

Cir. 2014).  An inmate must first show that "an objectively substantial risk of serious harm … exist[ed].  Second, once it is established that the official is aware of this substantial risk, the official must react to this risk in an objectively unreasonable manner." *Marsh*, 268 F.3d at 1028–29.  As to the subjective elements, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference… . The Eighth Amendment does not outlaw cruel and unusual 'conditions'; it outlaws cruel and unusual 'punishments.' … [A]n official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment." *Farmer*, 511 U.S. at 837–38; *Campbell v. Sikes*, 169 F.3d 1353, 1364 (11th Cir. 1999) (*citing Farmer*, 511 U.S. at 838) ("Proof that the defendant should have perceived the risk, but did not, is insufficient."); *Cottrell v. Caldwell*, 85 F.3d 1480, 1491 (11th Cir. 1996) (same). The conduct at issue "must involve more than ordinary lack of due care for the prisoner's interests or safety… .  It is obduracy and wantonness, not inadvertence or error in good faith, that characterize the conduct prohibited by the Cruel and Unusual Punishments Clause[.]"  *Whitley v. Albers*, 475 U.S. 312, 319 (1986).

> To be deliberately indifferent, Defendants must have been "subjectively aware of the substantial risk of serious harm in order to have had a '"sufficiently culpable state of mind."'"  *Farmer*, 511 U.S. at 834–38, 114 S.Ct. at 1977-80; *Wilson v. Seiter*, 501 U.S. 294, 299, 111 S.Ct. 2321, 2324–25, 115 L.Ed.2d 271 (1991)… . Even assuming the existence of a serious risk of harm and legal causation, the prison official must be aware of specific facts from which an inference could be drawn that a substantial risk of serious harm exists — and the prison official must also "draw that inference." *Farmer*, 511 U.S. at 837, 114 S.Ct. at 1979.

*Carter v. Galloway*, 352 F.3d 1346, 1349 (11th Cir. 2003). A defendant's subjective knowledge of the risk must be specific to that defendant because "imputed or collective knowledge cannot serve as the basis for a claim of deliberate indifference… . Each individual Defendant must be judged separately and on the basis of what that person knew at the time of the incident." *Burnette v. Taylor*, 533 F.3d 1325, 1331 (11th Cir. 2008). "The known risk of injury must be a strong likelihood, rather than a mere possibility before a [state official's] failure to act can constitute deliberate indifference." *Brown v. Hughes*, 894 F.2d 1533, 1537 (11th Cir. 1990) (citations and internal quotation marks omitted). Moreover, "[m]erely negligent failure to protect an inmate from attack does not justify liability under section 1983." *Id.*

"Prison correctional officers may be held directly liable under § 1983 if they fail or refuse to intervene when a constitutional violation occurs in their presence… . However, in order for liability to attach, the officer must have been in a position to intervene." *Terry v. Bailey*, 376 F. App'x 894, 896 (11th Cir.2010) (citing *Ensley v. Soper*, 142 F.3d 1402, 1407 (11th Cir. 1998)). The plaintiff has the burden of showing that the defendant was in a position to intervene but failed to do so. *Ledlow v. Givens*, 500 F. App'x 910, 914 (11th Cir. 2012) (citing *Hadley v. Gutierrez*, 526 F.3d 1324, 1330–31 (11th Cir. 2008)).

Consequently, to survive the properly supported motion for summary judgment filed by the defendants, Phillips must first demonstrate an objectively substantial risk of serious harm existed to him prior to each incident at issue and "that the defendant[s] disregarded that known risk by failing to respond to it in an objectively reasonable manner." *Johnson*

*v. Boyd*, 568 F. App'x 719, 721 (11th Cir. 2014), *citing Caldwell*, 748 F.3d at 1100.  If he establishes these objective elements, Phillips must then satisfy the subjective component. To do so, Phillips "must [show] that the defendant subjectively knew that [Phillips] faced a substantial risk of serious harm.  The defendant must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he[/she] must also draw the inference."  *Id.* (internal citation omitted).

> To survive a motion for summary judgment, a plaintiff must submit evidence that the defendant-official had subjective knowledge of the risk of serious harm.  *McElligott v. Foley*, 182 F.3d 1248, 1255 (11th Cir. 1999).  In determining subjective knowledge, a court is to inquire whether the defendant-official was aware of a "***particular threat or fear felt by [the] [p]laintiff***."  *Carter v. Galloway*, 352 F.3d 1346, 1350 (11th Cir. 2003) (emphasis added).  Moreover, the defendant-official "must be aware of specific facts from which an inference could be drawn that a substantial risk of serious harm exists — and the prison official must also draw that inference."  *Id.* at 1349 (quotations omitted).

*Johnston v. Crosby*, 135 F. App'x 375, 377 (11th Cir. 2005) (emphasis in original).

Phillips alleges that the defendants acted with deliberate indifference to his safety with respect to physical attacks perpetrated against him by inmate Reginald White on August 22, 2015; inmate Adrian Talley on September 17, 2015; and inmates Keyonte Arrington and Sylvester Johnson on September 26, 2015. Specifically, Phillips asserts that on August 22, 2015, after a verbal altercation with inmate Donald Willard, he returned to his general population dorm to retrieve his identification card pursuant to an order from correctional officers, and inmate Reginald White subjected him to a surprise attack. Doc. 11-1 at 2. Phillips explains that the September 17, 2017 altercation with inmate Talley in

the Restricted Privilege Dorm occurred due to an unreported incident[7] between these inmates on the previous day. Phillips also alleges that defendant Bradley Walker returned him to the Restricted Privilege Dorm after this altercation despite his having enemies in this dorm.  The undisputed prison records demonstrate that Walker did escort Phillips to the Restricted Privilege Dorm for placement because this dorm was Phillips' assigned housing unit, but, due to a verbal exchange with other inmates upon entering the dorm, Walker determined that Phillips should not return to the Restricted Privilege Dorm and should instead be placed in segregation. Doc. 43-3 at 2. Walker therefore placed him in segregation.  Doc. 43-1 at 5 & Doc. 43-3 at 2.  Finally, Phillips maintains that on September 26, 2015, in the Restricted Privilege Dorm, he engaged in a fight with inmates Arrington and Johnson, with whom he allegedly has a somewhat problematic history.

The defendants deny that they acted with deliberate indifference to Phillips' safety. Specifically, the defendants maintain they had no knowledge that Phillips was in danger from any of the inmate attackers prior to the altercations at issue.  The defendants further assert that sufficient correctional personnel were assigned to the dorms at the time of the altercations – generally, one cubicle officer and two officers roving the dorms – for purposes of providing security. On August 22, 2015, Sgt. Wendall McCray began an investigation of threats made by Phillips to inmate Donald Willard. Willard eventually advised McCray that "he had been threatened and propositioned for sex by inmate Phillips. At this time all questioning ceased and Inmate Phillips was instructed to return to his

---

[7] Phillips has a record of sexually harassing and threatening other inmates. *See* Docs. 34-2 through 34-19.

assigned dorm [Dorm E-1 — a general population dorm] for his identification card." Doc. 11-1 at 2.  Phillips did not advise any officer that he feared for his safety in dorm E-1 and simply obeyed the order to retrieve his identification care. While retrieving his card, Phillips engaged with Reginald White in a physical altercation. Phillips suffered a laceration to the right side of his face and a laceration and bruise to his right forehead.  Doc. 33-1 at 1. Phillips entered a guilty plea to a disciplinary for making a threat to inmate Willard.  Doc. 11-1 at 5.

Based on his disruptive actions, "Phillips was assigned to the restricted Privilege Dormitory [housed in Dorm B1] pending disciplinary action for Threats.  Inmates Phillips and White agreed to sign an Inmate Compatibility Statement ... . Inmate White was assigned to Segregation Cell B6-1B for assault on another inmate." Doc. 11-1 at 3.  Despite their signing the Inmate Compatibility Statement indicating resolution of their differences, Doc. 11-1 at 4, correctional officials did not place inmates Phillips and White in the same dorm.

On September 17, 2016, while housed in the Restricted Privilege Dorm, Phillips and inmate Adrian Talley engaged in a physical altercation. Doc. 11-1 at 9. The record reflects no evidence that prior to this altercation Phillips advised any correctional official that he feared for his safety from Talley.  Instead, the incident report for this altercation establishes the altercation "stemmed from an [unreported] incident the day before. Inmate Talley advised Lieutenant Walker inmate Phillips was trying to masturbate on several other inmates in the dorm.  Inmates Phillps and Talley were escorted to the Health Care Unit for

a medical assessment." Doc. 11-1 at 9.  The body chart prepared for Phillips regarding this incident showed he suffered only abrasions on each side of his right knee.  Doc. 11-1 at 11. After his examination by medical personnel, defendant Walker attempted to return Phillips to his assigned dorm, Dorm B1.   Due to protestations by other inmates in this dorm indicating they did not want Phillips housed with them, defendant Walker instead "placed Phillips in Segregation Cell F5-1A." Doc. 43-3 at 2; *see also* Doc. 43-1 at 5. Phillips received a disciplinary citation for disorderly conduct on September 17, 2015 arising from his physical altercation with inmate Talley. Doc. 11-1 at 10.

On September 25, 2015, Officer McDonald approached Phillips in segregation and advised Phillips that he had been approved for transfer to Dorm B1. Doc. 1 at 5.  Phillips states that McDonald returned him to "B-1 despite his pleas not to [be housed in this dorm]." Doc. 43-1 at 5. The following day, inmates Phillips, Arrington and Johnson engaged in a physical altercation. Phillips concedes that he "was fighting" with these inmates. Doc. 11-1 (Body Chart) at 14. At this time, "[t]here were three (3) officers assigned" to provide security for Dorm B1, a cubicle officer and two officers who patrolled the dorm. Doc. 11-2 at 2. Upon investigation, Lt. Althea Townsend discovered that the altercation arose from a prior incident between the inmates — an incident none of the inmates reported to correctional staff.  Doc. 11-1 at 12.  "Inmates Johnson and Arrington were processed into Administrative Segregation for [a] rule violation — Fighting with a weapon." Doc. 11-1 at 12.  "All inmates involved were separated on that day and have been separated since the incident."  Doc. 11-5 at 2.

With respect to the altercation on August 22, 2015, the record contains no evidence that any defendant had knowledge that a risk of harm existed to Phillips when he went to his living area to retrieve his identification card. Phillips presents no facts which would support a claim of deliberate indifference by the defendants as to this attack. After this altercation, correctional officials placed inmate White, the inmate Phillips identified as his attacker, in disciplinary segregation and moved Phillips to Dorm B1, the Restricted Privilege Dorm.

In regard to the September 17, 2015 altercation with inmate Adrian Talley, Phillips again presents no facts to support a claim of deliberate indifference by the defendants. An investigation of this incident by correctional officials revealed that Phillips attempted "to masturbate on several other inmates" the previous day, an incident not reported to correctional officials, and Talley simply attacked Phillips the following day in response to Phillips' prior actions. Doc. 11-1 at 9. When defendant Walker attempted to return Phillips to the Restricted Privilege Dorm after his medical assessment related to the altercation with inmate Talley, several unidentified inmates voiced their objection to his housing Phillips in the dorm. Defendant Walker therefore determined Phillips should be placed in another area of the facility and immediately transported him to the segregation unit for confinement. Doc. 43-3 at 2 & Doc. 43-1 at 5. Again, the record is devoid of evidence that an objectively substantial risk of harm to Phillips existed at the time of the altercation with Talley or that the defendants had knowledge of facts from which they could infer that Talley posed a serious risk of harm to Phillips.

With respect to the September 26, 2015 altercation involving inmates Arrington and Johnson, the court finds that defendants Jones, Walker, Townsend, Simmons, Rumph, Thomas and Harris cannot be held responsible for the actions of Officer McDonald regarding his return of Phillips to the Restricted Privilege Dorm, as the law is well settled "that Government officials may not be held liable for the unconstitutional conduct of their subordinates under the theory of respondeat superior [or vicarious liability].... *Robertson v. Sichel*, 127 U.S. 507, 515–516, 8 S.Ct. 1286, 3 L.Ed. 203 (1888) ('A public officer or agent is not responsible for the misfeasances or position wrongs, or for the nonfeasances, or negligences, or omissions of duty, of the subagents or servants or other persons properly employed by or under him, in the discharge of his official duties'). Because vicarious liability is inapplicable to … § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Ashcroft v. Iqbal*, 556 U.S. 662, 676, 129 S.Ct. 1937, 1948 (2009); *Cottone v. Jenne*, 326 F.3d 1352, 1360 (11th Cir. 2003) ("[S]upervisory officials are not liable under § 1983 for the unconstitutional acts of their subordinates on the basis of respondeat superior or vicarious liability."); *Marsh v. Butler County*, 268 F.3d 1014, 1035 (11th Cir. 2001) (A supervisory official "can have no respondeat superior liability for a section 1983 claim."); *Gonzalez v. Reno*, 325 F.3d 1228, 1234 (11th Cir. 2003) (concluding that supervisory officials are not liable on the basis of respondeat superior or vicarious liability); *Hartley v. Parnell*, 193 F.3d 1263, 1269 (11th Cir. 1999), citing *Belcher v. City of Foley*, 30 F.3d 1390, 1396 (11th Cir. 1994) (42 U.S.C. § 1983 does not allow a plaintiff to hold supervisory

officials liable for the actions of their subordinates under either a theory of respondeat superior or vicarious liability.). "Absent vicarious liability, each Government official, his or her title notwithstanding, is only liable for his or her own misconduct." *Iqbal*, 556 U.S. at 677, 129 S.Ct. 1949. Thus, liability for the action of Officer McDonald in returning Phillips to the Restricted Privilege Dorm could attach to the defendants only if they "personally participate[d] in the alleged unconstitutional conduct or [if] there is a causal connection between [their] actions … and the alleged constitutional deprivation." *Cottone*, 326 F.3d at 1360.

To establish the required causal connection and therefore avoid entry of summary judgment in favor of the defendants, Phillips must present sufficient evidence that would be admissible at trial of either "a history of widespread abuse [that] put[] [the defendants] on notice of the need to correct the alleged deprivation, and [they] fail[ed] to do so" or "a … custom or policy [that] result[ed] in deliberate indifference to [his safety], or … facts [that] support an inference that [the named defendants] directed the [Officer McDonald] to act unlawfully, or knew that [he] would act unlawfully and failed to stop [him] from doing so." *Cottone*, 326 F.3d at 1360 (internal punctuation and citations omitted). Upon review of the pleadings and evidentiary materials submitted in this case, it is clear that Phillips has failed to meet this burden.

The record before the court contains no evidence to support an inference that the defendants directed Officer McDonald to act unlawfully or knew that he would act unlawfully and failed to stop such action.  In addition, Phillips has presented no evidence

of obvious, flagrant or rampant abuse of continuing duration in the face of which the defendants failed to take corrective action; instead, the undisputed records demonstrate that the defendants continuously undertook actions to separate Phillips from those inmates with whom he had engaged in physical altercations. These records also demonstrate that the challenged action did not occur pursuant to a policy enacted by the defendants.  Thus, the requisite causal connection does not exist in this case and liability under the custom or policy standard is likewise not justified. *Cf. Employment Div. v. Smith*, 494 U.S. 872, 877, 110 S.Ct. 1595, 108 L.Ed.2d 876 (1990); *Turner v. Safely*, 482 U.S. 78, 107 S.Ct. 2254, 96 L.Ed.2d 64 (1987).

For the foregoing reasons, summary judgment is due to be granted in favor of the defendants with respect to liability based on the theory of respondeat superior or vicarious liability. Phillips also has failed to present evidence which would be admissible at trial showing "an objectively substantial serious risk of harm" posed to him by inmates Arrington and Johnson prior to the September 26, 2015 attack, a required element for establishing deliberate indifference. *Marsh*, 268 F.3d at 1028–29; *Carter*, 352 F.3d at 1350 (holding that deliberate indifference requires "much more than mere awareness of [an inmate's] generally problematic nature.").

Furthermore, even if Phillips had satisfied the objective component, his deliberate indifference claims nevertheless fail as he has not demonstrated the defendants were subjectively aware of any risk of harm to him posed by inmates White, Talley, Arrington or Johnson prior to the incidents at issue. *Johnson*, 568 F. App'x at 722 (complaint properly

dismissed because "[n]owhere does the complaint allege, nor can it be plausibly inferred, that the defendants subjectively foresaw or knew of a substantial risk of injury posed by [the inmate-attackers].");  *Johnston*, 135 F. App'x at 377 (Where allegations simply inferred that prison officials should have known that inmate-attacker posed a threat to others due to past behavior and general verbal threats, defendants were entitled to summary judgment because Plaintiff provided no evidence that prison officials "had subjective knowledge of the risk of serious harm presented by [fellow inmate]" and "introduced no evidence indicating that he notified [the defendants] of any particularized threat by [his attacker] nor of any [specific] fear [he] felt."); *see also McBride v. Rivers*, 170 F. App'x 648, 655 (11th Cir. 2006) (holding that district court properly granted summary judgment to the defendants as the plaintiff "failed to show that the defendants had subjective knowledge of a risk of serious harm" because Plaintiff merely advised he "had problems" with fellow inmate and was generally "in fear for [his] life."); *Chatham v. Adcock*, 334 F. App'x 281, 293-294 (11th Cir. 2009) ("[A]lthough Plaintiff asserts that [a fellow inmate] threatened him repeatedly in the days before the assault, Plaintiff has not identified any specific 'serious threat' from [fellow inmate], which he then reported to [the defendants].").

In summary, the record reflects no evidence showing that the defendants acted with deliberate indifference to Phillips' safety, and summary judgment is therefore due to be granted in favor of the defendants on the failure to protect claims.

2.  <u>Medical Treatment</u>.  Phillips alleges a "lack of medical treatment" for the cut to his right forearm suffered in the September 26, 2015 altercation. Complaint in Case No.

2:16-CV-109-WKW-SRW – Doc. 1 at 5.  He also makes reference to "how long it took to stop the bleeding." *Id.*[8]  The undisputed medical records compiled at the time of the treatment provided to Phillips refute his allegations of deliberate indifference.

To prevail on a claim concerning an alleged denial of adequate medical treatment, an inmate must, at a minimum, show that the defendants acted with deliberate indifference to his serious medical needs.  *Estelle v. Gamble*, 429 U.S. 97 (1976); *Taylor v. Adams*, 221 F.3d 1254 (11th Cir. 2000); *McElligott v. Foley*, 182 F.3d 1248 (11th Cir. 1999); *Waldrop v. Evans*, 871 F.2d 1030, 1033 (11th Cir. 1989).  Specifically, correctional personnel may not subject an inmate to "acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs."  *Estelle*, 429 U.S. at 106, 97 S.Ct. at 292; *Adams v. Poag*, 61 F.3d 1537, 1546 (11th Cir. 1995) (citation and internal quotations omitted) (As directed by *Estelle*, a plaintiff must establish "not merely the knowledge of a condition, but the knowledge of necessary treatment coupled with a refusal to treat or a delay in [the acknowledged necessary] treatment."

> That … negligence … is insufficient to form the basis of a claim for deliberate indifference is well settled.  *See Estelle v. Gamble*, 429 U.S. 97, 105-07, 97 S.Ct. 285, 292, 50 L.Ed.2d 251 (1976); *Adams v. Poag*, 61 F.3d 1537, 1543 (11th Cir. 1995). Instead, something more must be shown. Evidence must support a conclusion that a prison [official's] harmful acts were intentional or reckless.  *See Farmer v. Brennan*, 511 U.S. 825, 833-38, 114 S.Ct. 1970, 1977-79, 128 L.Ed.2d 811 (1994); *Cottrell v. Caldwell*, 85 F.3d 1480, 1491 (11th Cir. 1996) (stating that deliberate indifference is equivalent of recklessly disregarding substantial risk of serious harm to inmate); *Adams*, 61 F.3d at 1543 (stating that plaintiff must show more than mere negligence to assert an Eighth Amendment violation); *Hill v. Dekalb Regional Youth Detention Ctr.*, 40 F.3d 1176, 1191 n. 28 (11th Cir. 1994)

---

[8]Other than these statements, Phillips presents no specific facts in support of his claim against the named defendants, all of whom are correctional officials.

(recognizing that Supreme Court has defined "deliberate indifference" as requiring more than mere negligence and has adopted a "subjective recklessness" standard from criminal law); *Qian v. Kautz*, 168 F.3d 949, 955 (7th Cir. 1999) (stating "deliberate indifference" is synonym for intentional or reckless conduct, and that "reckless" conduct describes conduct so dangerous that deliberate nature can be inferred).

*Hinson v. Edmond*, 192 F.3d 1342, 1345 (11th Cir. 1999).

When seeking relief based on deliberate indifference, an inmate is required to establish "an objectively serious need, an objectively insufficient response to that need, subjective awareness of facts signaling the need and an actual inference of required action from those facts." *Taylor*, 221 F.3d at 1258; *McElligott*, 182 F.3d at 1255 (holding that for liability to attach, the official must know of and then disregard an excessive risk to the prisoner's health or safety). Thus, to proceed on a claim challenging the constitutionality of access to medical care, "[t]he facts alleged must do more than contend medical malpractice, misdiagnosis, accidents, [or] poor exercise of medical judgment." *Simpson v. Holder*, 200 F.App'x 836, 839 (11th Cir. 2006) (internal citation omitted); *Estelle*, 429 U.S. at 106 (negligence does not "become a constitutional violation simply because the victim is incarcerated."); *Farmer*, 511 U.S. at 835, 836 (A complaint alleging negligence in obtaining medical treatment for an inmate "does not state a valid claim of [deliberate indifferend] under the Eighth Amendment[,]" nor does it establish the requisite reckless disregard of a substantial risk of harm so as to demonstrate a constitutional violation.); *Kelley v. Hicks*, 400 F.3d 1281, 1285 (11th Cir. 2005) ("Mere negligence … is insufficient to establish deliberate indifference."); *Comstock v. McCrary*, 273 F.3d 693, 703 (6th Cir.

2001) ("[A] plaintiff alleging deliberate indifference must show more than negligence" to proceed on an Eighth Amendment claim.).

Furthermore, "to show the required subjective intent …, a plaintiff must demonstrate that the public official acted with an attitude of 'deliberate indifference' … which is in turn defined as requiring two separate things 'awareness of facts from which the inference could be drawn that a substantial risk of serious harm exists [] and … draw[ing] of the inference[.]'" *Taylor*, 221 F.3d at 1258 (internal citations omitted). Deliberate indifference occurs only when a defendant "knows of and disregards an excessive risk to inmate health or safety; the [defendant] must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists and he must also draw the inference." *Farmer*, 511 U.S. at 837; *Johnson v. Quinones*, 145 F.3d 164, 168 (4th Cir. 1998) (holding that defendant must have actual knowledge of a serious condition and ignore known risk to serious condition to warrant finding of deliberate indifference). Additionally, "an official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment." *Farmer*, 511 U.S. at 838. Self-serving statements by a plaintiff do not create a question of fact in the face of contradictory, contemporaneously created medical records. *See Bennett v. Parker*, 898 F.2d 1530 (11th Cir. 1990); *Scott*, 550 U.S. at 380.

The undisputed contemporary medical records belie Phillips' claim that the defendants denied him medical treatment for the injury to his right forearm suffered in the

September 26, 2015 altercation with inmates Arrington and Johnson. These documents demonstrate that after separating the inmates, assessing their conditions and ensuring order had been restored, Officer Townsend escorted Phillips to the health care unit for evaluation and treatment.  Phillips arrived at the health care unit at approximately 6:35 a.m., Doc. 43-2 at 15, within a few minutes of correctional officials arriving on the scene of the altercation. During her initial examination of Phillips, the attending Licensed Practical Nurse observed a "large laceration" to his right forearm and a "small laceration to [his right] shoulder." Doc. 11-1 at 14.  The nurse applied pressure to the large laceration but it continued to "actively bleed[]."  Doc. 11-1 at 14. Due to the nature of his injuries, the attending nurse referred Phillips to a Registered Nurse for further evaluation.

Nurse Christina Patterson examined Phillips and noted that the laceration to his right forearm was "very deep, blood & swelling under skin, bleeding uncontrollable."  Doc. 43-2 at 15. Based on her evaluation, Nurse Patterson immediately contacted the facility's physician and they determined "[e]meregent intervention [was] required due to uncontrollable bleeding." Doc. 43-2 at 16. Nurse Patterson "activated" the emergency services plan at 6:36 a.m., Doc. 43-2 at 16, and correctional officials contacted a private rescue service to transport Phillips to the Troy Regional Medical Center for treatment of his right forearm. Doc. 11-1 at 12. Phillips remained in the health care unit under observation by Nurse Patterson until the rescue unit arrived at approximately 7:06 a.m. Doc. 43-2 at 16.  The rescue unit exited the facility at approximately 7:23 a.m.  Doc. 11-1

at 12; Doc. 43-2 at 16. Upon his arrival at the Troy Regional Medical Center, Phillips received emergent treatment for the injuries.

Under the circumstances of this case, the court finds that the actions of the defendants did not constitute deliberate indifference. Phillips' self-serving claim of a lack of due care does not create a question of fact in the face of contradictory, contemporaneously created medical records. *Whitehead*, 403 F. App'x 401, 403 (11th Cir. 2010); *see also Scott*, 550 U.S. at 380 (holding that a court need not believe a party's version of facts at the summary judgment stage when such version is "blatantly contradicted by the record, so that no reasonable jury could believe it[.]"); *Feliciano*, 707 F.3d at 1253–54 (11th Cir. 2013) (same). In addition, Phillips has presented no evidence that the defendants consciously disregarded his injuries. *Taylor*, 221 F.3d at 1258; *McElligott*, 182 F.3d at 1255 (holding that for liability to attach, the official must know of and then disregard an excessive risk of harm to the inmate); *Quinones*, 145 F.3d at 168 (holding that defendant must have actual knowledge of a serious condition and ignore known risk to serious condition to warrant finding of deliberate indifference). Instead, the only evidence before the court indicates that the defendants promptly referred Phillips to medical personal for evaluation and treatment. The record is therefore devoid of evidence showing that any defendant acted with deliberate indifference to Phillips' medical needs. Consequently, summary judgment is due to be granted in favor of the defendants on this claim.

**B.   Use of Pepper Spray**

Phillips alleges that defendant Rumph sprayed him with pepper spray during his physical altercation with inmates Arrington and Johnson on September 26, 2015.  Doc. No. 1 at 6.  Phillips asserts that because he was bleeding and "fighting for his life" at the time Rumph deployed the pepper spray, use of this chemical agent "was unnecessary."  Doc. 1 at 6.  In response to this allegation, defendant Rumph avers that he observed inmates Phillips, Arrington and Johnson engaged in a physical altercation and ordered that they "stop fighting," but the inmates refused this order.  Doc. 34-1 at 1–2.  Rumph states he then "yelled, 'Gas!' and administered a one (1) second burst of Sabre Red into the facial area of … Phillips, Arrington and Johnson."  Doc. 34-1 at 2.

Claims of excessive force by prison officials against convicted inmates are governed by the Eighth Amendment's proscription against cruel and unusual punishment.  *Campbell v. Sikes*, 169 F.3d 1353, 1374 (11th Cir. 1999).  "The Eighth Amendment's prohibition of cruel and unusual punishments necessarily excludes from constitutional recognition *de minimis* uses of physical force, provided that the use of force is not of a sort repugnant to the conscience of mankind."  *Hudson v. McMillian*, 503 U.S. 1, 9-10 (1992) (internal quotations and citations omitted).  "'Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates a prisoner's constitutional rights.'"  *Sims v. Artuz*, 230 F.3d 14, 22 (2nd Cir. 2000) (quoting *Johnson v. Glick*, 481 F.2d 1028, 1033 (2d Cir. 1973)).

The standard applied to an Eighth Amendment excessive force claim contains both a subjective and objective component.  *Hudson*, 503 U.S. at 8.  The subjective component

requires that prison "officials act[ed] with a sufficiently culpable state of mind." *Id.* (internal quotations omitted). To establish the subjective element, a plaintiff must demonstrate the "necessary level of culpability, shown by actions characterized by wantonness." *Sims*, 230 F.3d at 21. With respect to the objective component, a plaintiff must show that "the alleged wrongdoing was objectively harmful enough to establish a constitutional violation." *Hudson*, 503 U.S. at 8. In addition, "the use of excessive physical force against a prisoner may constitute cruel and unusual punishment [even] when the inmate does not suffer serious injury." *Id.* at 4. "Injury and force … are only imperfectly correlated, and it is the latter that ultimately counts. "'When prison officials maliciously and sadistically use force to cause harm,' the Court recognized, 'contemporary standards of decency always are violated … whether or not significant injury is evident. Otherwise, the Eighth Amendment would permit any physical punishment, no matter how diabolic or inhuman, inflicting less than some arbitrary quantity of injury.' *Hudson*, 503 U.S. at 9, 112 S.Ct. at 995[.]" An inmate who is gratuitously beaten by guards does not lose his ability to pursue an excessive force claim merely because he has the good fortune to escape without serious injury." *Wilkins v. Gaddy*, 559 U.S. 34, 38 (2010). Thus, in an excessive force case such as the one at hand, "the 'core judicial inquiry' is 'not whether a certain quantum of injury was sustained, but rather whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm.'" *Bowden v. Stokely*, 576 F. App'x 951, 953 (11th Cir. 2014) (quoting *Wilkins v. Gaddy*, 559 U.S. 34, 37 (2010)).

> Under the Eighth Amendment, force is deemed legitimate in a custodial (1992 setting as long as it is applied "in a good faith effort to maintain or restore discipline [and not] maliciously and sadistically to cause harm." *Whitley v. Albers*, 475 U.S. 312, 320-21, 106 S.Ct. 1078, 89 L.Ed.2d 251 (1986) (quoting *Johnson v. Glick*, 481 F.2d 1028, 1033 (2nd Cir.1973)); *see also Hudson v. McMillian*, 503 U.S. 1, 8, 112 S.Ct. 995, 117 L.Ed.2d 156). To determine if an application of force was applied maliciously and sadistically to cause harm, a variety of factors are considered including: "the need for the application of force, the relationship between that need and the amount of force used, the threat reasonably perceived by the responsible officials, and any efforts made to temper the severity of a forceful response." *Hudson*, 503 U.S. at 7-8, 112 S.Ct. 995; *see also Whitley*, 475 U.S. at 321, 106 S.Ct. 1078; *Harris v. Chapman*, 97 F.3d 499, 505 (11th Cir. 1996). From consideration of such factors, "inferences may be drawn as to whether the use of force could plausibly have been thought necessary, or instead evinced such wantonness with respect to the unjustified infliction of harm as is tantamount to a knowing willingness that it occur." *Whitley*, 475 U.S. at 321, 106 S.Ct. 1078 (quoting *Johnson*, 481 F.2d at 1033).

*Skrtich v. Thornton*, 280 F.3d 1295, 1300-01 (11th Cir. 2002); *Pearson v. Taylor*, 665 F. App'x 858, 863 (11th Cir. 2016) (identifying the five factors relevant in evaluating whether force was applied maliciously or sadistically as "(1) the need for force; (2) the relationship between that need and the amount of force used; (3) the extent of the resulting injury; (4) the extent of the threat to the safety of staff and inmates, as reasonably perceived by the responsible official on the basis of facts known to that official; and (5) any efforts made to temper the severity of the use of force.") (citing *Whitley*, 475 U.S. at 320–21). "When evaluating whether the force used was excessive, we give broad deference to prison officials acting to preserve discipline and security." *Pearson*, 665 F. App'x at 863–64 (citing *Bennett v. Parker*, 898 F.2d 1530, 1533 (11th Cir. 1990).

"Prison guards may use force when necessary to restore order and need not wait until disturbances reach dangerous proportions before responding." *Bennett*, 898 F.2d at

1533.  Generally, correctional officers are authorized to use force when a prisoner "fails to obey an order.  Officers are not required to convince every prisoner that their orders are reasonable and well-thought out before resorting to force."  *Pearson*, 665 F. App'x at 864 (internal citation omitted).  The Eleventh Circuit has long recognized that "[p]epper spray is an accepted non-lethal means of controlling unruly inmates."  *Danley v. Allen*, 540 F.3d 1298, 1307 (11th Cir. 2008), *overruled on other grounds as recognized by Randall v. Scott*, 610 F.3d 701, 709 (11th Cir. 2010); *Scroggins v. Davis*, 346 F. App'x 504, 505 (11th Cir. 2009) (holding that "use of one burst of oleoresin capsicum (O.C.) spray against [the inmate plaintiff after his failure to obey a direct order and engaging in a scuffle with guards] was not excessive force.").  Pepper spray "is designed to be disabling without causing permanent physical injury and is a reasonable alternative to escalating a physical confrontation.  Therefore, a short burst of pepper spray is not disproportionate to the need to control an inmate who has failed to obey a jailer's orders.  A short burst is around five seconds or less."  *Pearson*, 665 F. App'x at 864 (internal quotation marks and citations omitted).

In this case, the first *Whitley* factor, the need for the use of force, is established by the undisputed evidence that Phillips and the other inmates were engaged in a physical altercation and refused a direct order to cease fighting at the time defendant Rumph used his pepper spray.

> The second *Whitley* factor, the relationship between the need for force and the amount of force, also weighs against finding a constitutional violation. A short burst of pepper spray is not disproportionate to the need to control an inmate who has failed to obey a jailer's orders. *See Clement v. Gomez,* 298

F.3d 898, 904 (9th Cir. 2002) (holding that the use of two five-second bursts of pepper spray was not excessive when used to break up a fight among inmates after they had repeatedly ignored verbal commands to stop); *Jones,* 207 F.3d at 495–97 (holding that the use of a type of pepper spray called capstun against a prisoner was not a violation of the Eighth Amendment when he had disobeyed a supervisor's order and then questioned a guard's order); *see also Baldwin v. Stalder,* 137 F.3d 836, 838, 841 (5th Cir. 1998) (holding that jail guards did not use excessive force when they sprayed a two-second burst of chemical mace into a bus filled with prisoners who had continued jumping on the seats, spitting at officers outside the bus, rocking the bus, and otherwise causing a disturbance after three times being told to stop); *Williams v. Benjamin,* 77 F.3d 756, 762–63 (4th Cir. 1996) (holding that the use of chemical mace was not excessive when a prisoner disobeyed an order to stop throwing water at a guard and then questioned the guard's second order to remove his arm from his cell's food service window); *cf. Vinyard,* 311 F.3d at 1348 ("Courts have consistently concluded that using pepper spray is reasonable … where the plaintiff was … refusing police requests.").

Nor does the third *Whitley* factor—the extent of [Plaintiff's] injury from the initial use of pepper spray—favor finding a constitutional violation.  Pepper spray "is designed to disable a suspect without causing permanent physical injury.  Indeed, pepper spray is a very reasonable alternative to escalating a physical struggle… ." *Vinyard,* 311 F.3d at 1348 (internal quotation marks and citations omitted).  Any injuries or discomfort [Plaintiff] suffered as a necessary result of a dose of pepper spray were neither substantial nor long lasting.

*Danley*, 540 F.3d at 1307–08.

The fourth factor set forth in *Whitley*, which requires an assessment of "the extent of the threat to the safety of staff and inmates, as reasonably perceived by the responsible official on the basis of facts known to them," 475 U.S. at 321, does not support a finding of a constitutional violation when applied to the use of the pepper spray in this case. Specifically, Phillips and his fellow inmates created a security risk when they engaged in a physical altercation and failed to obey an order to stop fighting. The court finds that

defendant Rumph's use of pepper spray constituted a reasonable response to the threat posed by the inmates. Finally, the fifth *Whitley* factor, any effort made to temper the severity of the use of force, fails to implicate a violation of Phillips' constitutional rights as Rumph deployed only one short burst of pepper spray and correctional personnel transported Phillips to the health care unit within a few minutes of his exposure to the pepper spray. Doc. 43-2 at 15

Under *Whitley*, it is clear that defendant Rumph did not subject Phillips to the use of excessive force as prohibited by the Eighth Amendment. Instead, the credible and objective evidence demonstrates that there was a need for the exercise of force due to Phillips' engaging in a physical altercation with two other inmates and the failure of these inmates to stop fighting when ordered to do so. The evidence also demonstrates that defendant Rumph used only a reasonable amount of force against the inmates in a good faith effort to gain control of the situation and restore order. Finally, the evidence establishes that the defendant did not apply force in a sadistic or malicious manner. Defendant Rumph is therefore entitled to summary judgment on the excessive force claim against him.

## V.  CONCLUSION

Accordingly, it is the RECOMMENDATION of the Magistrate Judge that:

1.  The defendants' motion for summary judgment be granted.

2.   This case be dismissed with prejudice.

3.   Costs be taxed against the plaintiff.

On or before **February 19, 2019**, the parties may file objections to the Recommendation. The parties must specifically identify the factual findings and legal conclusions in the Recommendation to which an objection is made. Frivolous, conclusive, or general objections will not be considered by the court.

Failure to file written objections to the Magistrate Judge's findings and recommendations under the provisions of 28 U.S.C. § 636(b)(1) shall bar a de novo determination by the District Court of legal and factual issues covered in the Recommendation and waives the right of the plaintiff to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions accepted or adopted by the District Court except upon grounds of plain error or manifest injustice. 11TH Cir. R. 3-1; *see Resolution Trust Co. v. Hallmark Builders, Inc.*, 996 F.2d 1144, 1149 (11th Cir. 1993); *Henley v. Johnson*, 885 F.2d 790, 794 (11th Cir. 1989).

Done, on this the 5th day of February, 2019.

/s/ Susan Russ Walker
Susan Russ Walker
United States Magistrate Judge

32